## M. Pilcher v. M. Prewitt.

A vendor who warrants the title "against himself, his heirs and assigns, but only such as he now holds under the said *Baron de Bastrop*, and intermediate vendors, forever," is bound by a limited warranty only.

A buyer cannot withhold payment until security be given, when the source from which he apprehends eviction has been excluded by the terms of the warranty.

C. C. 2477, 2535.

APPEAL from the District Court of Morehouse, *Richardson*, J.

*Parsons & Newton*, for plaintiff and appellant, cited: C. C. 2481, *Laville* v. *Rightor*, 17 L. R. 303; *Estele* v. *Holmes*, 3 R. 134; 5 An. 667, 683.

*Hunton*, for defendant:

The Court will see the distinction between this, and those cases cited by plaintiff in his brief. In the case 17 L. 303, there the vendor sells "all his land back (of where he resides,) without setting forth any *metes* and *bounds*. The case 3 R. 134, don't applyto this case, for, it cannot be said in this case, that defendant was aware of any danger of eviction, and so of the case 5th An. 667. The case 8 La. 114, cannot apply, for here it is certain, that defendant will have to acquire title from the United States, or suffer eviction, whereas in the other case, it was not certain that there was any danger of eviction, and in that case the Court said that "though the United States exercised dominion over a vast tract of land, yet some small tracts may be owned by individuals." Nor have the cases cited in 3d L. 490, and 16 L. 501, any application to this. In those cases "although the General Government refused to confirm, yet the parties may have had a good title, &c."

If the plaintiff, when he sold to defendant, had been in a situation to acquire a pre-emption right, it might have altered the case, but the testimony of *Mc Fee* and *Craxten*, page 5, Record, says, the plaintiff never resided on the land, but that defendant made the settlement himself. See 3 An. 203; 4 An. 519.

The Court is also respectfully referred to 3 An. 326; 5 An. 314; C. C. Arts. 1887, 1960.

BUCHANAN, J. Suit on a note given for the second instalment of the price of land sold by plaintiff to defendant. The defendant pleads that the consideration of the note has failed, the title to the land purchased being in the government of the United States, which is about surveying the same; that in order to be maintained in the possession of said land, defendant will have to acquire title from the government, or else suffer himself to be evicted therefrom; that plaintiff's title to the land, if he had any, which is denied, was not such as would enable him or defendant to avail themselves of the Act of Congress of 1851, for the completion of the title thereto. Defendant claims in reconvention that the first instalment of the price, which he has already paid, be refunded to him.

The evidence shows, that plaintiff sold defendant, on the 31st July, 1850, "all his right, title, interest, claim or demands in and to the following named and described property, to-wit: a tract of land lying on both sides of the road leading from Point Pleasant to (Bastrop) Merouge, on which *Jacob Stroup* once lived, containing five hundred and six arpents, more or less, situated in the parish of Morehouse, and part of grant of land known as the Baron de Bastrop grant of land; a regular chain of title to which has passed from the said *Baron de Bastrop* to the said *Mason Pilcher*, and the same tract on which said *Prewitt* now resides and cultivates." Then follows a particular description of the metes and bounds of the land. The deed proceeds as follows:

"and the said *Mason Pilcher* will warrant and defend the right and title of said land against himself, his heirs and assigns, but only such as he now holds under the said *Baron de Bastrop*, and intermediate vendors, forever."

This is clearly a limited warranty. C. C. 2479. The defendant has admitted by his signature of the deed, the truth of the enunciation contained therein, that a regular chain of titles had passed from the *Baron de Bastrop* to the plaintiff. The price stipulated is about two dollars an acre, for cultivated land; and for that price the parties have understood and agreed, the one to convey, and the other to acquire, such title as the *Baron de Bastrop* and his assigns, had conveyed to the plaintiff. The conveyances under which plaintiff held, have not been impugned by the defendant, and he has, therefore, not any claim against plaintiff under the warranty expressed in the deed. As against the United States, the deed excludes a warranty. But the defendant insists on his right to a restitution of the price of sale, under the provisions of Article 2481 of the Code. That Article is not applicable under the facts proved in this case. The defendant has not been evicted from the land. On the contrary, his pleadings admit that he is now in possession; and it is proved by two witnesses, introduced by himself, that he has been in possession since 1845 or 1846. The defendant has given in evidence a decision rendered in the Supreme Court of the United States at the December term, 1850, in the suit of *The United States* v. *The Cities of Philadelphia and New Orleans,* adverse to the Bastrop grant; and we have considered the question whether the defendant might not, under the prayer of general relief in his answer, be allowed to withhold payment to plaintiff, until security was given, in conformity to Article 2535 of the Civil Code. But a careful examination of the Record has brought us to the conclusion that he is within the exception contained in the second clause of that Article, and consequently is not entitled to withhold payment.

It appears from the documentary and parol evidence adduced, that plaintiff sued defendant for this land in a petitory action, in November, 1849. To that action the defendant pleaded, in the same month, two exceptions: the first, that plaintiff was without interest in the subject matter, by reason of having made a cession of his property in the United States Court in Louisiana, under the Bankrupt Act; the second, that the description of the land claimed in the petition, was vague and indefinite. This petitory action was compromised and settled in July, 1850, by the sale of plaintiff's title to defendant in part consideration of which the note now sued upon, was given; at which time the petitory action was dismissed. The suit of the United States against certain holders of land under *Bastrop's* title, was then pending in the Supreme Court of the United States, and it is fair to presume, was known to both the parties. Such knowledge is the most natural and probable reason for the limitation of warranty by plaintiff to his own acts, and those of his assigns. In the winter following this sale, the Supreme Court of the United States rendered its decision upon the Bastrop title, reversing the judgment of the Circuit Court in Louisiana. Had the final judgment been otherwise, defendant would have obtained a title good against the United States for an exceedingly low price. He assumed the risk of the decision by the terms of his deed, and cannot be listened to, in complaining that he has played a losing game. Besides, justice compels us to say, that the evidence by no means justifies the assumption that defendant will ever be evicted by the United States. At the same session of

72

PILCHER
v.
PREWITT.

Congress during which the decision of the Supreme Court of the United States was rendered, an Act of Congress was passed for the relief of actual settlers who had acquired title under the Bastrop grant; and providing for a confirmation to them in some cases, and a right of preëmption in others. It is altogether probable that the defendant will be found in one of the categories of this Act of Congress. At the date of pleading herein, he was still in time to have made his proof before the Register and Receiver under that Act. At all events, the plaintiff did not pretend to sell defendant the title of the United States; but a title adverse to that of the United States.

Judgment of the District Court reversed, and judgment for plaintiff against defendant for five hundred dollars, with interest at the rate of eight per cent. per annum, from 31st July, 1850, until paid, and costs in both Courts.